Glen Alden Coal Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued March 6, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*J. H. Oliver,* with him *Franklin B. Gelder,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Richard H. Wagner,* Associate Counsel, for appellee.

*Joseph S. Needle,* for intervener, appellee.

OPINION BY RENO, J., April 10, 1951:

On March 11, 1949, John L. Lewis, the international president of the United Mine Workers of America, proclaimed a "Memorial Period", of two weeks commencing March 14th, "during which suspension of mining will occur." Appellant ceased to mine coal for that period. Harold Fitser, claimant and intervening appellee, was a member of the Union, and was employed by appellant as a "construction helper." On the morning of March 14th he reported for work, worked for one hour, and was then informed by his foreman that there would be no further work for him until after the expiration of the memorial period. On the theory that claimant was "laid off" by appellant the Board awarded benefits.

This result was based upon a letter by a district president of the Union to the district manager of the Pennsylvania State Employment Service, in which he stated that a written agreement between the Union and the mine operators provides: "that in the event of any strike or suspension of mining at any collieries, the firemen, engineers, and pumpmen shall continue at their work, and it shall be the duty of the joint parties to this agreement to have this complied with." The

letter further stated that it has been the custom to include various types of maintenance workers in the categories specifically mentioned in the agreement, and that "Maintenance men were not included in the order of this Union to suspend mining operations during this two week memorial period."

Obviously, if there was such an agreement and if claimant was included in its terms, as he claims, appellant violated and breached the agreement by refusing to employ him during the memorial period. Claimant's remedy, then, is provided by the agreement which, as we understand it, consists of a proceeding before a conciliation board and an umpire. An employe, who has a contract with his employer for a definite period or for work during specified periods and whose contract is breached by his employer must pursue the remedies provided by the contract, and is not entitled to unemployment compensation. His claim is for the *wages* stipulated in the contract, or for *damages* for its breach, not for unemployment *benefits*. His claim is a charge against the employer, not against the State's unemployment compensation fund. This, for the reason, that while, because of the employer's alleged breach, the employe does not work, he is not *unemployed* within the meaning of the Unemployment Compensation Law, which provides §4(u), 43 P.S. §753, "An individual shall be deemed *unemployed* with respect to any week during which he performs no services and with respect to which no remuneration is paid *or payable to him, . . .*" (Emphasis added.) Fitser claims that remuneration is *payable* to him under the agreement and hence his case is not within the statutory definition of unemployment.

However, the district president's letter was received over the objection of appellant, and it was clearly incompetent. The Board could not base a finding of fact, and this Court cannot predicate judgment, on it. It

was in no sense an official document even though it was solicited by the State's representative. It was a hearsay statement, unsupported by oath, and was received as evidence of the assertions contained in it without affording appellant's counsel an opportunity for cross-examination. True, the Board and its referees are not required to "conform to common law or statutory rules of evidence", Law, supra, §505, 43 P.S. §825, but where a timely objection is made to incompetent evidence it is nevertheless not admissible. *Phillips v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 75, 30 A. 2d 718. The end result is that since the Board's findings of fact are based solely upon the letter they are not supported by competent evidence, and its decision must be vacated.

Other interesting questions were presented by able counsel at the oral argument, but they do not require discussion or decision. The case, we think, comes to this: If the alleged agreement between the Union and appellant is properly established claimant will be remitted to the remedies, if any, provided by the agreement or, lacking such contractual remedies, to his action at law. If there is no such agreement, an award of compensation benefits can be sustained only upon findings of fact which are supported by competent evidence.

The decision is vacated, and the record is remanded to the Board for further proceedings consistent with this opinion.