**Gary BORTZ, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Reznor Division of FL Industries), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1994.

Decided March 15, 1995.

Richard G. Spagnolli, for petitioner.

Albert S. Lee, for respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

Gary Bortz (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that reversed a referee's [1] decision granting Claimant's reinstate-

1. Referees are now called Workers' Compensa- tion Judges under the new amendments to the

ment petition. On March 10, 1994, the Board amended its previous order, to certify that the present matter warranted an interlocutory appeal by permission because it involved a controlling question of law with substantial ground for difference of opinion. 42 Pa.C.S. § 702(b). This Court subsequently granted Claimant's petition for permission to appeal pursuant to Pa.R.A.P. 1311 and Pa.C.S. § 702(b). We affirm the reversal of the referee's decision.

Claimant sustained a work-related injury to his lower back in the course of his employment with Reznor Division of FL Industries (Employer) on June 7, 1989. Claimant received compensation benefits pursuant to a notice of compensation payable. In September of 1989, Claimant returned to work in a light duty capacity and worked at various positions until February 25, 1991. He recommenced his collection of benefits at this time. On May 31, 1991, Claimant returned to work in a light duty capacity with the Mercer County Association for the Retarded (MCAR). Claimant worked there until he was indefinitely suspended on June 26, 1991, for alleged misconduct on June 25 and 26 of 1991.

On August 27, 1991, Claimant filed a reinstatement petition asserting that his disability recurred on June 26, 1991. Employer specifically denied that Claimant's injury recurred and responded that "Claimant was working as of [June 26, 1991] on a job to which he had been released as having the physical capability of performing said job" and that "Claimant lost said job, however, due to his misconduct at work." Answer to Petition For Reinstatement of Compensation, September 6, 1991.

In a separate unemployment compensation proceeding, the referee found that Claimant's conduct at MCAR on June 25 and June 26, 1991, did not constitute willful misconduct. The unemployment compensation referee made the following relevant findings:

7. Effective June 26, 1991, the claimant was placed on an indefinite suspension as a result of the allegations of the work shop manager.

8. On June 25, 1991, the claimant did not use vulgar language in the sheltered work shop nor did he disrupt the work force.

9. On June 26, 1991, although he did request permission to speak to the work shop manager, the claimant was not out of his work area without permission, was not insubordinate and did not fail to follow the instructions of the work shop manager.

\* \* \* \* \* \*

11. The claimant worked to the best of his abilities.

Unemployment Compensation Referee's Decision, October 3, 1991, Findings of Fact 7, 8, 9 and 11.

Claimant offered the unemployment compensation decision into evidence during the workers' compensation reinstatement proceeding. The workers' compensation referee determined that "[t]he findings of fact ... are binding on this referee and may not be relitigated [sic]" and "there is no possible way the employer would be able to demonstrate that the Claimant's actions of June 25 and 26, 1991 exhibited unsatisfactory efforts and performance." Workers' Compensation Referee's Decision, February 18, 1993, at 5. The referee ordered Claimant's benefits reinstated, declaring that Employer was estopped from rearguing the issue of willful misconduct in the reinstatement proceeding. The Board reversed the referee's decision, concluding that the doctrine of collateral estoppel was inapplicable.

■ Claimant asserts that he is entitled to reinstatement of his benefits as a matter of law because the issue of Claimant's alleged misconduct was previously litigated in the unemployment proceeding and decided in his favor. The sole question for our review is whether the issue decided by the unemployment compensation referee was the same issue to be determined in the reinstatement petition before the referee for the Bureau of

---

· Workers' Compensation Act effective August 31, 1993. However, because this case was before the referee prior to the effective date of the amendments we will refer to Persifor S. Oliver, Jr. as referee and not as Workers' Compensation Judge.

Workers' Compensation. In short, does the doctrine of collateral estoppel apply?[2]

■ In a second action by the same parties upon a different claim, the judgement in the prior action operates as an estoppel in the second action only if the matters at issue (1) are identical, (2) were actually litigated, (3) were essential to the judgment, and (4) were material to the litigation. *Wright v. Workmen's Compensation Appeal Board (Adam's Mark Hotel),* 163 Pa.Commonwealth Ct. 172, 639 A.2d 1347 (1994) *(citing, Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Company),* 88 Pa.Commonwealth Ct. 76, 488 A.2d 1177 (1985), *allocatur denied,* 515 Pa. 616, 530 A.2d 869 (1987)).

Both parties in this case agree that Employer contested the award of unemployment compensation benefits based upon Claimant's dismissal for alleged misconduct on June 25 and 26. The parties also agree that the referee in the unemployment compensation proceeding determined that Employer did not persuade the referee that Claimant's behavior amounted to willful misconduct thereby justifying denial of unemployment compensation benefits. The parties disagree concerning the effect of the unemployment compensation decision on the workers' compensation proceeding. Claimant contends that Employer is precluded from re-litigating Claimant's conduct and actions on June 25 and 26.

■ The Unemployment Compensation Law (Law)[3] and The Pennsylvania Workers' Compensation Act (Act)[4] are two distinct acts advancing two separate policies. Determinations made in one forum do not necessarily preclude the litigation of issues in the other. By and through the Unemployment Compensation Law, our Legislature calls for the compulsory "setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Section 3 of the Law, 43 P.S. § 752. This is distinguishable from the purpose of the Workers' Compensation Act, which is to provide benefits to employees who suffer work-related disabilities. *U.S. Steel Corp. v. Workmen's Compensation Appeal Board,* 62 Pa.Commonwealth Ct. 502, 437 A.2d 92 (1981). Furthermore, workers' compensation is contemplated in the Pennsylvania Constitution under Article 3, Section 18, whereas unemployment compensation is the result of state legislation enacted in cooperation with federal legislation and certification by the United States Secretary of Labor. Section 3 of the Law, 43 P.S. § 752 (Historical and Statutory Notes), *See also,* 42 U.S.C. § 503.

■ The Unemployment Compensation Law and the Workers' Compensation Act are also distinguishable in that the Unemployment Compensation Board of Review is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, and to determine the weight to be accorded evidence in unemployment cases. *Unemployment Compensation Board of Review v. Wright,* 21 Pa.Commonwealth Ct. 637, 347 A.2d 328 (1975). In workers' compensation actions the Workmen's Compensation Appeal Board is bound by the referee's findings of fact unless it chooses to hear new evidence or the findings are not supported by substantial competent evidence. *Helms Express v. Workmen's Compensation Appeal Board (Lemonds),* 106 Pa.Commonwealth Ct. 287, 525 A.2d 1269 (1987), *appeal dismissed,* 519 Pa. 319, 548 A.2d 252 (1988).

■ Another feature that differentiates the two acts is that eligibility for benefits is based on different criteria. In order to establish a right to workers' compensation, Section 301(c)(1) of the Act, 77 P.S. § 411(1), requires that the following elements be present: 1) an employment relationship, 2) an

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990).

3. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

accident or an injury, 3) the accident or injury arises in the course of employment, and 4) the accident or injury is related to the employment. To receive unemployment compensation benefits a claimant must be *unemployed* according to the definition in Section 4(u) of the Law, 43 P.S. § 753(u). In addition to being *unemployed*, a claimant must have sufficient wages in covered employment during the base year in order to be eligible for benefits during the benefit year. Sections 401 and 404 of the Law, 43 P.S. §§ 801, 804. The Workers' Compensation Act enables an employer to minimize tort liability for work-related injuries. Employers surrender their defenses to civil actions and in exchange employees forego any actions in tort. By contrast, the Unemployment Compensation Law is unconcerned with tort liability or civil cause of action. Unemployment compensation is designed as insurance against the burden of indigence resulting from the economic insecurity of involuntary unemployment. Section 3 of the Law, 43 P.S. § 752.

■ Our Pennsylvania Supreme Court held in *Odgers v. Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987), that a predicate finding that a work-stoppage was a strike under the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101– 1101.2301, did not collaterally estop litigation of that question in a later unemployment compensation proceeding. In concluding that there was no identity of issues in that matter the *Odgers* Court reasoned that "[t]he Public Employees Relations Act and the Pennsylvania Unemployment Compensation Law were enacted to promote decidedly different public policies of this Commonwealth." *Id.* Pa. at 387, A.2d at 363. A finding resulting from the interpretation of one statute should not preclude re-litigation of an issue which arises under a completely different statute enacted for an entirely different purpose.

In this context Claimant contends that if Employer is dissatisfied with the unemployment compensation referee's finding concerning Claimant's conduct on June 25 and 26, 1991, it is obligated to appeal that decision to the Unemployment Compensation Board of Review, and cannot re-litigate the issue in a different forum. Claimant cites *Grant v. GAF Corporation*, 415 Pa.Superior Ct. 137, 608 A.2d 1047 (1992), *affirmed*, 536 Pa. 429, 639 A.2d 1170 (1994), to support his position that "where the agency is acting in a judicial capacity and resolves disputed issues of fact which the parties had an opportunity to litigate, the courts will not hesitate to apply preclusion principles." Claimant also cites *Frederick v. American Hardware Supply*, 384 Pa.Superior Ct. 72, 557 A.2d 779, *allocatur denied* 523 Pa. 636, 565 A.2d 445 (1989), where our Pennsylvania Superior Court held that workers whose behavior constitutes willful misconduct as proved by the employer in an unemployment compensation proceeding shall not be permitted to assert that they were wrongfully discharged in a subsequently litigated contract action.

Claimant accurately asserts that these cases hold that an issue previously litigated by agencies acting in their judicial capacities preclude re-litigating the same issue in subsequent proceedings. However, the *Frederick* decision fails to mention *Odgers*.[5] In addition, we believe our controversy is distinguishable. We are asked to determine if the prior litigation of the specific issue of willful misconduct precludes the review of whether Claimant's unsatisfactory job performance caused his present lack of income. We believe the two issues are separate and distinct.

■ The unemployment compensation referee found that Claimant's actions did not constitute willful misconduct as defined in Section 402(e) of the Unemployment Compensation Law. 43 P.S. § 802(e). The employer bears the burden of proving willful misconduct. *County of Luzerne v. Unemployment Compensation Board of Review*, 148 Pa.Commonwealth Ct. 473, 611 A.2d 1335

---

5. A panel of the United States Court of Appeals for the Third Circuit interpreting Pennsylvania law, considered *Odgers* and issued·a decision which held that a Pennsylvania Unemployment Compensation Board of Review decision that an employee voluntarily quit has no preclusive effect in a later action. *Kelley v. TYK Refractories Co.*, 860 F.2d 1188 (3rd Cir.1988).

(1992). Based on the unemployment referee's findings the workers' compensation referee found that Employer was precluded from establishing that Claimant's actions were unacceptable. We believe this was error on the part of the workers' compensation referee.

 Where a claimant's loss of earnings results from unsatisfactory job performance and not from a recurrence of a work-related disability a referee should properly deny reinstatement of workers' compensation benefits. *Christopher v. Workmen's Compensation Appeal Board (Dravo Corporation),* 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989) (claimant was discharged for nonperformance, bad-attitude, and problems with expenses, and not as a result of physical complaints or inability to physically perform his work). A claimant may be prevented from receiving workers' compensation benefits where his or her loss of earnings is due to some action or activity for which the *claimant* was at fault. *Hertz Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers),* 168 Pa.Commonwealth Ct. 657, 651 A.2d 1145 (1994) (interpreting *Christopher*). In contrast, we note this court has reviewed many situations where an employee was discharged for unsatisfactory job performance and received unemployment compensation.[6]

 This is a crucial distinction because a determination by an unemployment compensation referee that an employee's behavior did not constitute willful misconduct is not a determination that the employee should not have been discharged. Incompetence, inexperience, or inability may well justify discharge, yet, at the same time, such conduct does not constitute willful misconduct so as to render an employee ineligible for unemployment benefits. *Geslao v. Unemployment Compensation Board of Review,* 103 Pa.Commonwealth Ct. 116, 519 A.2d 1096 (1987). Also, an employer may dismiss an employee for absenteeism which is not due to a recurrence of a work-related disability. An employee's absenteeism, however, is not equivalent to willful misconduct in all cases. *See, Atlantic Richfield Co. v. Unemployment Compensation Board of Review,* 65 Pa.Commonwealth Ct. 65, 441 A.2d 516 (1982). Finally, if two employees are fighting and both assert that the other was the aggressor an employer may discharge both employees even if he is unable to ascertain who was at fault. Such discharges are unrelated to the recurrence of disability and are not triggered by willful misconduct. *See, Wolfe v. Unemployment Compensation Board of Review,* 57 Pa.Commonwealth Ct. 255, 425 A.2d 1218 (1981). Reinstatement of workers' compensation benefits are to be denied where the cause of Claimant's loss of earnings is not related to his disability and is based upon a discharge for unsatisfactory job performance.[7]

Claimant contends that the issue in both proceedings is a factual one regarding Claimant's conduct at MCAR. Even though the unemployment compensation referee found that Claimant worked to the best of his abilities while at MCAR the essential inquiry was limited to a determination of whether willful misconduct was established.

> Willful misconduct is: (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from an employee, or (4) negligence which manifests culpability, wrongful intent, evil de-

---

6. A truck driver, who was discharged for four incidents in which cargo was not properly secured, was not guilty of willful misconduct. *Michael A. Tokarsky, Jr. Trucking, Inc. v. Unemployment Compensation Board of Review,* 158 Pa.Commonwealth Ct. 23, 631 A.2d 686 (1993). A book store manager, who negligently failed to secure a bank bag containing $1,033.66 in the store safe, resulting in the loss of $820.34 to his employer, was not guilty of willful misconduct. *Frazier v. Unemployment Compensation Board of Review,* 49 Pa.Commonwealth Ct. 474, 411 A.2d 580 (1980).

7. A claimant's workers' compensation benefits were denied where loss of earning resulted from discharge due to excessive absenteeism. *Woodard v. Workmen's Compensation Appeal Board,* 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980). A claimant's workers' compensation benefits were suspended where claimant was discharged because of excessive absenteeism and failure to report off from work. *Workmen's Compensation Appeal Board v. John W. Galbreath & Co.,* 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975).

sign, or intentional or substantial disregard for employer's interests or the employee's duties and obligations.

*Andrews v. Unemployment Compensation Board of Review,* 159 Pa.Commonwealth Ct. 455, 633 A.2d 1261 (1993). We believe that none of the four prongs necessary for estoppel was satisfied in the unemployment compensation action.

■ In summary, in the workers' compensation reinstatement proceeding, the Claimant's burden was to prove that, through no fault of his own, his earning power was again adversely affected by his disability, and that the disability which gave rise to the original claim in fact continues. *Petras v. Workmen's Compensation Appeal Board (USX Corporation),* 158 Pa.Commonwealth Ct. 528, 632 A.2d 592 (1993). In the unemployment compensation proceeding, the Employer bears the burden of proving willful misconduct to negate Claimant's entitlement to unemployment compensation. *Lautek Corporation v. Unemployment Compensation Board of Review,* 138 Pa.Commonwealth Ct. 547, 588 A.2d 1007 (1991). In the workers' compensation claim an Employer may successfully defend by proving unsatisfactory job performance. The burden is on the Employer in each action but the Employer must prove different standards of conduct. Returning to the requirements for estoppel and scrutinizing the separate actions, it becomes clear that there is no estoppel. We affirm the Board's reversal.

### ORDER

AND NOW, this 15th day of March, 1995, the order of The Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

DOYLE, Judge, dissenting.

I respectfully dissent. I believe the majority has misperceived the concept of a claimant's "fault" which is a superseding cause of a claimant's increased loss of earning power. *See Pieper v. Ametek–Thermox Instruments,*

526 Pa. 25, 584 A.2d 301 (1990) (a claimant is entitled to reinstatement where his/her increased loss of earning power is through no fault of his/her own). I agree with the majority that the Workers' Compensation Act[1] and the Unemployment Compensation Law[2] serve different purposes and are procedurally different. However, those distinctions are not relevant for the determination of the narrow issue of whether a claimant's conduct rises to the level of willful misconduct as defined for purposes of unemployment compensation, and that level of misbehavior which will preclude a claimant from receiving workers' compensation benefits. This level of conduct is well-defined in the area of unemployment compensation as:

> (1) the wanton and wilful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifest culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa.Commonwealth Ct. 90, 97, 309 A.2d 165, 168–69 (1973). I do not believe that a different standard applies to workers' compensation.

First, the majority misstates the standard where a claimant will be considered to be "at fault" for his increased loss of earning power as a standard of "unsatisfactory job performance." This concept was explicitly rejected by this Court's recent decision in *Hertz Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers),* 168 Pa.Commonwealth Ct. 657, 651 A.2d 1145 (1994):

> The relevant inquiry before us is not whether Claimant's separation from employment was due simply to his own inability, because his performance did not measure up to Employer's new standards, but

---

1. Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1066.

2. Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

rather, whether there was an element of fault on Claimant's part which removed him from the workforce.... In other words, in order to prevail, Employer was required to prove either that Claimant's termination was voluntary, or that he was dismissed by Employer for good cause.

... What has never been considered as a standard in any previous case is a claimant's discharge due simply to his own inability to measure up to his employer's new requirements; mere inability or ordinary negligence is not the standard imposed under Section 413 of the [Workers' Compensation] Act.

*Id.* at ——–——, 651 A.2d at 1148–49 (emphasis omitted). The key finding is whether the claimant was discharged for cause; if he was, benefits are denied. *SEPTA v. Workmen's Compensation Appeal Board (Pointer)*, 145 Pa.Commonwealth Ct. 539, 604 A.2d 315 (1992).

This Court's opinion in *Christopher v. Workmen's Compensation Appeal Board (Dravo Corp.)*, 124 Pa.Commonwealth Ct. 562, 556 A.2d 544 (1989), relied on by the majority, does not articulate a different standard. Although the Court in that case described the claimant's behavior as "unsatisfactory job performance," the reason the claimant's performance was unsatisfactory was due to his misconduct: non-performance, bad attitude, and problems with expenses. *Id.* at 564, 556 A.2d at 545. Simply stated, while the term willful misconduct may always be described as "unsatisfactory job performance," all unsatisfactory job performances do not necessarily rise to the level of willful misconduct. We have never held that an employer's discharge of an employee merely for an unsatisfactory job performance precludes a claimant's entitlement to workers' compensation benefits. *Hertz; see also Buckley v. Workmen's Compensation Appeal Board (Corbo's AM PM Mini Market)*, 109 Pa.Commonwealth Ct. 64, 530 A.2d 530 (1987); *Woodard v. Workmen's Compensa-*

*tion Appeal Board*, 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980) (claimant's loss of earnings was due to his dismissal for excessive absenteeism therefore a suspension was properly entered); *Workmen's Compensation Appeal Board v. John W. Galbreath & Co.*, 20 Pa.Commonwealth Ct. 283, 341 A.2d 541 (1975) (excessive absenteeism precluded reinstatement).[3]

The employer's burden to prove willful misconduct in the area of unemployment compensation is similar. For example, in *Herndon v. Unemployment Compensation Board of Review*, 115 Pa.Commonwealth Ct. 419, 540 A.2d 633 (1988), the claimant was dismissed for "unsatisfactory performance, due to repeated errors." The employer testified that "whenever Claimant was told of a mistake she had made, she would apologize and correct the mistake." *Id.* at 421, 540 A.2d at 634. The claimant did not exhibit an unwillingness to work to the best of her ability; her "under-performance" was simply a lack of ability. We therefore held that mere incompetence alone will not support a finding of willful misconduct. *See also Norman Ashton Klinger & Associates, P.C. v. Unemployment Compensation Board of Review*, 127 Pa.Commonwealth Ct. 293, 561 A.2d 841 (1989) (a finding that a claimant has worked to the best of his ability negates a conclusion of willful misconduct); *Colonial Taxi and Paratransit Services, Inc. v. Unemployment Compensation Board of Review*, 104 Pa.Commonwealth Ct. 264, 521 A.2d 536 (1987) (negligence is not misconduct unless claimant's actions demonstrate manifest culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests). Under our analysis in *Hertz Penske* similar conduct that is merely incompetent or negligent would also not preclude a claimant from receiving workers' compensation benefits.

Second, the fact that the Workers' Compensation Act and the Unemployment Compensation Law serve different purposes and

---

3. I would note that there are other ways that a claimant can be considered to lose earning power through his own "fault" other than by dismissal for willful misconduct, such as voluntarily removing oneself from the employment market without a necessitous and compelling reason.

*Huber v. Workmen's Compensation Appeal Board (Liberty Mutual Insurance Co.)*, 154 Pa.Commonwealth Ct. 423, 623 A.2d 962, *petition for allowance of appeal denied*, 535 Pa. 635, 631 A.2d 1007 (1993).

are procedurally different is also not dispositive. It has often been held that an issue in one proceeding will be precluded from relitigation in a second unrelated proceeding.

For example, this Court has found that an employer who has admitted in proceedings under the Heart and Lung Act [4] that a claimant cannot return to his time of injury job, cannot argue in a workers' compensation proceeding that the claimant can perform his time of injury job during the same period of time. *Kohut v. Workmen's Compensation Appeal Board (Township of Forward)*, 153 Pa.Commonwealth Ct. 382, 621 A.2d 1101, *petition for allowance of appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993).

In *Christopher v. Council of Plymouth Township*, 160 Pa.Commonwealth Ct. 670, 635 A.2d 749 (1993), in an action against the employer for permanent disability benefits under a collective bargaining agreement, the claimant was precluded from relitigating the issue of whether he was completely recovered from his work related injury where a workers' compensation referee in a previous decision had specifically found that he had completely recovered. Moreover, we also held that the township personnel review board's determination, based on medical testimony, that the claimant had engaged in malingering by exaggerating his injury to avoid performance of his job was similarly preclusive.

In yet another instance, the Superior Court held that the Unemployment Compensation Board of Review's determination that claimants were discharged for willful misconduct foreclosed the argument in a subsequent contract action that they were wrongfully discharged. *Frederick v. American Hardware Supply Co.*, 384 Pa.Superior Ct. 72, 557 A.2d 779, *petition for allowance of appeal denied*, 523 Pa. 636, 565 A.2d 445 (1989).[5]

---

4. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38.

5. The majority questions the validity of this holding because of the Supreme Court's decision in *Odgers v. Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987). In that case the Supreme Court determined that the

Accordingly, I would find that the unemployment compensation referee's conclusion that Claimant did not engage in willful misconduct precludes Employer from reasserting the argument before a workers' compensation referee, and would reverse the Board.

legal standards defining "work stoppage" and "strike" under the Unemployment Compensation Law and the Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1011.101–.2301, were totally distinct, and, in fact determined different issues. I do not believe the court's conclusion would change the outcome of *Frederick*.