Anthony **VERBILLA**, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Schuylkill Nursing Association), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1995.
Decided Dec. 6, 1995.

Ellen J. Karka, for petitioner.

Joseph J. Knox, for respondent.

Before COLINS, P.J., and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

## OPINION

McGINLEY, Judge.

Anthony Verbilla (Claimant) petitions for review of the June 25, 1994, order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's[1] decision that denied benefits.

On July 7, 1992, Claimant filed a workers' compensation claim petition wherein he asserted that he sustained head and neck injuries which left him disabled from January 7, 1992, through March 28, 1992. Claimant maintained that his injuries were the result of beatings inflicted by an Alzheimer's patient while he performed his duties as a nursing aide for Schuylkill Nursing Association (Employer).

In a separate unemployment compensation proceeding the referee determined that Claimant voluntarily left work without cause of necessitous and compelling nature. The unemployment compensation referee made the following relevant findings:

2. The claimant was engaged by the employer to work with the same patient during times assigned by the employer.

3. While on duty for his shift, the claimant was required, as were other nurse's aides working the two other shifts during the day, to make regular entries in a log book pertaining to the patients' condition, behavior, medication and other similar points of observation.

4. The log book was required by Schuylkill Nursing Association and was considered a part of the employer's records pertaining to individual patients.

5. The log entries made by the claimant failed to show at any time that the patient to which the claimant was assigned abused him in any fashion.

6. The log book required by the employer fails to show entries by any other nurse's aide that the patient was abusive.

7. The claimant knowingly made false and incomplete log entries.

8. During the course of his employment, the claimant never advised Schuylkill Nursing Association that the patient was abusive in any manner.

9. Visitors to the patient entrusted in the claimant's care never observed any abusive behavior by the patient.

10. The claimant never advised patient visitors that the patient was abusive.

11. The patient did not abuse the claimant.

Unemployment Compensation Referee's Decision, November 10, 1992, (UC Referee's Decision) at 1–2, Findings of Fact 2–11; Reproduced Record (R.R.) at 84–85. The unemployment compensation referee concluded that Claimant was not entitled to receive benefits. UC Referee's Decision at 2; R.R. at 85. The Unemployment Compensation Board of Review (UCBR) affirmed the referee and Claimant appealed. Claimant then withdrew the appeal.

---

1. Referees are now called Workers' Compensation Judges under the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701. *See* Act 44, Act of July 2, 1993, P.L. 190. This case was before the Workers' Compensation Judge prior to the effective date of the amendments, August 31, 1993, but since this case involves a decision from an unemployment compensation referee and a Workers' Compensation Judge we will refer to the Workers' Compensation Judge as such rather than as a referee.

Employer requested dismissal of the workers' compensation claim based upon the fact findings of the unemployment compensation referee. The Workers' Compensation Judge found that Claimant's allegations of a work-related injury were identical to the allegations made in his unemployment compensation claim and concluded the Claimant was collaterally estopped.

Claimant appealed to the Board and argued that the critical issue before the UCBR was whether Claimant was available for work, whereas the critical issue in the workers' compensation proceeding was whether Claimant suffered a work-related injury. Claimant also argued that critical medical evidence submitted to the Workers' Compensation Judge was not available in the unemployment compensation proceeding. The Board rejected these arguments and affirmed the Judge's denial of the claim based on the doctrine of collateral estoppel.

■■■ The first question for our review[2] is whether a prior finding of fact made by an unemployment compensation referee that Claimant was not abused by a patient precludes the litigation of Claimant's alleged work-related injury in a workers' compensation proceeding. It is uniformly recognized that in a second action by the same parties upon a different claim, the judgment in the prior action operates as an estoppel in the second action only if the matters at issue 1) are identical, 2) were actually litigated, 3) were essential to the judgment, and 4) were material to the litigation. *Wright v. Workmen's Compensation Appeal Board (Adam's Mark Hotel)*, 163 Pa.Cmwlth. 172, 639 A.2d 1347 (1994).

Recently, we rejected the proposition that a determination by an unemployment compensation referee precludes a subsequent litigation of an identical issue before another agency. In our en banc decision, *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries)*, 656 A.2d

554, *petition for allowance of appeal granted,* 208 W.Dist.App. Dkt. 1995 (October 8, 1995), we held that a prior decision by an unemployment compensation referee on the issue of willful misconduct under the Unemployment Compensation Law (Law)[3] did not collaterally estop an employer from asserting unsatisfactory job performance as a defense to a claimant's reinstatement petition pursuant to Section 413(a) of the Workers' Compensation Act (Act).

In *Bortz,* we distinguished unemployment compensation proceedings from workers' compensation proceedings as follows:

> By and through the Unemployment Compensation Law, our Legislature calls for the compulsory "setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Section 3 of the Law, 43 P.S. § 752. This is distinguishable from the purpose of the Workers' Compensation Act, which is to provide benefits to employees who suffer work-related disabilities. *U.S. Steel Corp. v. Workmen's Compensation Appeal Board,* 437 A.2d 92 (Pa. Cmwlth.1981). Furthermore, workers' compensation is contemplated in the Pennsylvania Constitution under Article 3, Section 18, whereas unemployment compensation is the result of state legislation enacted in cooperation with federal legislation and certification by the United States Secretary of Labor. Section 3 of the Law, 43 P.S. § 752 (Historical and Statutory Notes), See also, 42 U.S.C. § 503.
>
> . . . .
>
> Another feature that differentiates the two [proceedings] is that eligibility for benefits is based on different criteria. In order to establish a right to workers' compensation, Section 301(c)(1) of the Act, 77 P.S. § 411(1), requires that the following elements be present: 1) an employment relationship, 2) an accident or an injury, 3) the accident or injury arises in the course of employment, and 4) the accident or inju-

**2.** Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Loose v. Workmen's Compensation Appeal Board (John H.*

*Smith Arco Station),* 144 Pa.Cmwlth. 332, 601 A.2d 491 (1991).

**3.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

ry is related to the employment. To receive unemployment compensation benefits a claimant must be unemployed according to the definition in Section 4(u) of the Law, 43 P.S. § 753(u). In addition to being unemployed, a claimant must have sufficient wages in covered employment during the base year in order to be eligible for benefits during the benefit year. Sections 401 and 404 of the Law, 43 P.S. §§ 801, 804. The Workers' Compensation Act enables an employer to minimize tort liability for work-related injuries. Employers surrender their defenses to civil actions and in exchange employees forego any actions in tort. By contrast, the Unemployment Compensation Law is unconcerned with tort liability or civil cause of action. Unemployment compensation is designed as insurance against the burden of indigence resulting from the economic insecurity of involuntary unemployment. Section 3 of the Law, 43 P.S. § 752.

*Bortz,* 656 A.2d at 557–58.

■ *Bortz* dictates that findings resulting from the interpretation and application of the Unemployment Compensation Law do not generally estop a separate agency from deciding an issue arising under a different statute in a distinguishable administrative scheme.[4] This Court revisited the issue of collateral estoppel in *Johnsonbaugh v. Department of Public Welfare,* 665 A.2d 20

(Pa.Cmwlth.1995), and in *Morrison v. Department of Corrections,* 659 A.2d 620 (1995), and held that an adjudication by an unemployment compensation referee on the issue of willful misconduct does not preclude litigating the issue of just cause for removal in a State Civil Service Commission proceeding.[5]

In the *Bortz* line of cases we furnished ample support for holding that a finding made in an unemployment compensation determination is not conclusive in a second proceeding before another agency. The Court also recognized that collateral estoppel did not apply in those cases because the issues before the unemployment referee and the Workers' Compensation Judge were not identical.

■ Our review of the record in this case reveals that in the unemployment compensation proceeding Claimant had to prove that he was abused by a patient in order to recover benefits. Likewise, before the Workers' Compensation Judge the critical factual allegation was that Claimant was abused by a patient. The unemployment compensation finding that there was no abuse addresses the identical issue confronted in the workers' compensation proceeding. We now hold that such a finding, although identical and essential, does not preclude the litigation of whether Claimant was injured in the course of his employment.

4. In *Bortz* we cited *Odgers v. Unemployment Compensation Board of Review,* 514 Pa. 378, 525 A.2d 359 (1987), where our Pennsylvania Supreme Court held that a predicate finding that a work-stoppage was a strike within the definitions of the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301, did not collaterally estop litigation of that issue in a subsequent unemployment compensation proceeding. Under the *Odgers* rationale agencies must look beyond the similarities between the issues, evaluate the policies behind the acts and apply estoppel only where the issues are identical and the actions promote similar policies and rights. Conversely in *Frederick v. American Hardware Supply Co.,* 384 Pa.Superior Ct. 72, 557 A.2d 779 (1989), the Pennsylvania Superior Court held that a finding of willful misconduct in an unemployment compensation proceeding precluded the plaintiffs from asserting that they had been wrongfully discharged in a subsequently litigated contract action. The Superior Court in *Frederick* did not

mention *Odgers* and did not discuss whether the Unemployment Compensation Law and the good cause requirement for employee discharge under contract law were designed to promulgate and protect similar policies and rights.

5. The Federal Courts have encountered similar issues. Recently in *Swineford v. Snyder County,* 15 F.3d 1258 (3d Cir.1994), a panel for the United States Court of Appeals for the Third Circuit interpreting Pennsylvania law found that a UCBR finding that an employee did not engage in conduct detrimental or disruptive to her employer's business did not preclude litigation of whether the employee's conduct interfered with the efficiency of her employer's provision of public service in federal court. The Third Circuit made a similar determination in *Kelley v. TYK Refractories Co.,* 860 F.2d 1188 (3d Cir.1988), holding that a UCBR decision that an employee voluntarily quit has no preclusive effect on that employee's subsequent race discrimination claim in federal court.

In *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975), our Supreme Court explained that the law in Pennsylvania on collateral estoppel as set forth in *Pilgrim Food Products Company v. Filler Products, Inc.*, 393 Pa. 418, 143 A.2d 47 (1958), "is merely a judicial translation of the Restatement, Judgments, § 68...." *Schubach*, 461 Pa. at 377, 336 A.2d at 333. Section 68 has since been superseded by the Restatement (Second) of Judgments § 27 (1982) which states the general rule of issue preclusion in language similar to the foregoing standard and the former Restatement section.[6] There are a number of exceptions to this general rule. The Restatement (Second) of Judgments § 28(3) provides that "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts...." The Restatement position concerning this exception is illustrated as follows:

6. A brings an action against B to recover for property damage.... The rules governing the conduct of litigation applicable in the court are substantially the same as those in courts of general jurisdiction. After trial verdict and judgment are rendered for A on the basis of a finding of B's negligence. In a subsequent action by B against A ... for personal injuries arising out of the same occurrence, the finding of B's negligence in the first action is conclusive.

7. The facts are the same as in Illustration 6, except that the first action is brought in a small claims court which ... operates informally without pleadings, counsel, or rules of evidence. The finding of B's negligence is not conclusive in the second action.

Restatement (Second) of Judgments § 28 cmt. d, illus. 6, 7 (1982).

■ Subject to fundamental due process controls, the UCBR is empowered to adopt procedural rules which, though foreign to a strictly adversarial system, are designed to insure that unemployment compensation claims are resolved in compliance with statutory requirements. *Vann v. Unemployment Compensation Board of Review*, 508 Pa. 139, 494 A.2d 1081 (1985). The General Assembly provided in Section 505 of the Law, 43 P.S. § 825, that:

The manner in which appeals shall be taken ... and the conduct of hearings and appeals, shall be in accordance with rules of procedure prescribed by the board [UCBR] whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure.

Given Employer's request in the present matter, to preclude the litigation of an issue previously determined before the UCBR, we find it highly significant that in unemployment compensation hearings the referee 1) can conduct broad examination of the parties and witnesses, 2) is required to assist any unrepresented party, and 3) has broad discretion to determine the order and scope of evidence presented at the hearing.[7] Issue preclusion under these circumstances would frustrate the policy determination by the General Assembly that permits the UCBR to dictate the procedural rules for the adjudication of unemployment compensation claims and also promotes a procedure that authorizes the UCBR to perform the fact finder's role without benefit of viewing the wit-

---

6. The Restatement (Second) of Judgments § 27 (1982) provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

7. The general rules for the conduct of hearings in unemployment compensation cases in 34 Pa. Code § 101.21(a) and (b) provide that:

(a) In a hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties

(b) The tribunal shall determine the order in which the evidence shall be presented in hearings. Within the discretion of the tribunal, the parties shall be permitted to present evidence and testimony which they believe is necessary to establish their rights.

**606** ■ ▮▮▮▮▮▮▮▮▮▮▮▮

nesses.[8] Practically speaking such an application of collateral estoppel would essentially require unemployment compensation referees, employers and employees to intensively litigate unemployment compensation cases, something the General Assembly plainly did not intend.

We will not apply issue preclusion in this case because to do so would be to hold, in effect, that Claimant loses both cases based on the finding of an unemployment compensation referee even though significantly different procedures apply and different policies and goals are at stake in the workers' compensation proceeding. A fresh determination of the factual issue by a Workers' Compensation Judge is warranted.

Since there is no estoppel we vacate the Board's order and remand this case for consideration of the merits of Claimant's workers' compensation claim.[9]

FRIEDMAN, J., concurs in the result only.

### ORDER

AND NOW, this 6th day of December, 1995, the order of the Workers' Compensation Appeal Board in the above-captioned matter is vacated and the case remanded for a full and fair consideration of the merits of Anthony Verbilla's workers' compensation claim petition dated July 7, 1992.

Jurisdiction relinquished.

DOYLE, Judge, dissenting.

I respectfully dissent for the reasons already expressed in my dissenting opinion in *Bortz v. Workmen's Compensation Appeal Board (Reznor Division of FL Industries),*

656 A.2d 554 (Pa.Cmwlth.1995) (Doyle, J., dissenting).

SMITH, J., joins in this dissent.

---

**8.** Section 504 of the Law, 43 P.S. § 824, expressly provides that the UCBR is the ultimate fact-finding body empowered to resolve conflicts in evidence, to determine the credibility of witnesses, to determine the weight to be accorded evidence in unemployment cases without taking additional evidence. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

**9.** In light of our conclusion that collateral estoppel does not apply here, it is unnecessary to address Claimant's second argument that critical medical evidence was not available to the unemployment compensation referee.